## A. E. GRAYSON *v*. T. J. HARRIS ET AL.

### [58 South. 775, 59 South. 1.]

JUSTICE OF THE PEACE. *Lien. Supersedeas. Code* 1906, *Sec.* 90.

Where a judgment is obtained in a justice of the peace court and real estate of the defendant levied upon and the defendant thereafter removes the case to the circuit court by *certiorari* as provided for under Code 1906, section 90, which operates as a *supersedeas*, the lien of such judgment acquired by the levy is not destroyed thereby but only stayed and may be enforced when the *certiorari* is dismissed.

APPEAL from the chancery court of Jones county.

HON. SAM WHITMAN, JR., Chancellor.

Suit by T. J. Harris and others against A. E. Grayson. From a decree overruling a demurrer to the bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*Hardy & Arnold,* for appellant.

All we see in this case is one question the answer to which in the affirmative will result in the affirmance of the action of the court below; in the negative, a reversal of the decree below.

This question is simply this: "When a levy of an execution is made on lands, does the granting of a writ of *certiorari* act as a release of the lien of the levy, or does it simply suspend the action under the writ until the *certiorari* is disposed of?"

If it is a release, then the appellant has no case here; if it is a mere suspension of the matter until the writ is disposed of, then the court below is wrong and the decree must be reversed. As we see it, this is the only real question presented by this record.

Now in our judgment Sec. 90, Code 1906, providing for the issuance of these writs of *certiorari* does not

have the effect of releasing the property from the lien of the levy. It is true the statute provides that the granting of the writ in the manner provided by law, shall act as a *supersedeas,* and also provides what judgment shall be rendered in case the judgment shall be affirmed.

In the case in question the judgment rendered by the circuit court at Hattiesburg in the *certiorari* find no error in the judgment and also find it was improperly granted and dismisses the writ. Now this judgment may be an erroneous one or it may not be. The question that this court will look at is not what reason the circuit judge gave for his conclusions but what result did he reach. If he reached the right conclusions, regardless of the route he followed to reach that conclusion, his action will be affirmed. Now the result in this case was that the writ was improperly granted and the matter is dismissed. So if the court looks at it as an improper granting of a writ then our statute as to the kind of a judgment that should be rendered has no application because there is no provision, as we understand it, as to the kind of a judgment that shall be rendered where the dismissal is proper. A judgment of the circuit court will not be disturbed, whatever may have been the view which produced it, if the right result was reached. *Burrow* v. *Sanders,* 57 Miss. 213. The right result was reached in the present regardless of what reasons were assigned. As we said before unless the judgment of the lower court, on the hearing of the writ of *certiorari,* is either reversed or affirmed we have no statute as to what judgment shall be rendered. Nor further do we have in either instance any direction or law that the lien of the judgment is released where a judgment on the writ of *certiorari* is rendered in accordance with the statute. Now having no direction in our law, in order in this case to see the effect of the granting of the writ of *certiorari* on the lien of the levy of execution, we must very necessarily go to the common law or to other states where a like question has been decided.

At the outset we desire to call the attention of the court to the case of *Buckley* v. *George et al.*, 71 Miss. 580, 15 So. 46, where the writ of *supersedeas* was granted on an appeal from an order appointing a receiver for the property of Mrs. Buckley. This is a case that is not in point at all with the case on trial as we see it. As the court well says in that case the question there is a new one. And in that connection we call the court's attention to the language of the court in that case wherein Justice COOPER says, in discussing the effect of a writ of *supersedeas*, "Ordinarily, the rule undoubtedly is that a *supersedeas* fixes and preserves the existing conditions until the cause can be finally heard and determined. Nothing that has been done under the judgment or decree is undone, or its validity impaired; but nothing further can be done, for the judgment or decree being the sole authority for action, and it being suspended, there is necessarily a suspension of action."

Now in this case we insist that the granting of the *supersedeas* was merely a suspension of all action under the levy until the hearing; that as soon as the *supersedeas* was dissolved then there was nothing to prevent the carrying out of the sale of the property levied on. It is true that in the same case there is a *dictum* that says "that with us the *supersedeas* discharges the levy of the writ of execution," but an examination of the cases cited for this statement will show that it refers only to personal property the actual physical possession of which is affected by the levy of the writ of execution. As in the case of the receivership there is a reason why the possession of the personal property should be redelivered to the defendant in execution but there can be no valid reason shown why the mere lien of a levy on land is discharged by the granting of the writ of *supersedeas*. The only effect of a *supersedeas* is to merely suspend execution and does not affect the judgment. *McKinney* v. *Green*, 52 Miss. 70.

The dismissal of the writ can have no operation or effect on the original proceedings. 6 Cyc. (5), page 818. The dismissal of the *supersedeas* leaves the judgment of the inferior tribunal in full force. 4 Ency. Pl. & Pr., page 252; *Standifer* v. *Rush,* 8 S. & M. 383. The execution is not superseded. 4 Ency. Pl. &Pr., 208. The granting of the writ of *supersedeas* acts as a mere stay of proceedings. 6 Cyc. 800 (L)., See also *Littleton* v. *Yost,* 3 Lea (Tenn.), 267; *Livingston* v. *New York El. R. Co.,* 60 Hun (N. Y.), 473; *Woolfolk* v. *Burns,* 45 Miss. 96, 97, 47 N. W. 460.

We call the attention of the court to the cases cited in 8 Words & Phrases under the heading Supersedeas and the wholly unanimous conclusion reached in all of these cases that the only effect of the *supersedeas* is to merely suspend and not release the lien of the levy of a writ of execution or other action taken under the judgment or decree that is superseded by the writ.

The writ of execution binds the property from the time of the levy (Sec. 2742, Code 1906) and the levy having been made and the lien of the execution having attached we do not think under our law this lien was discharged by the issuance of the writ of *certiorari* and the *supersedeas* thereunder. The plaintiff in execution retained his lien established by this levy with his right to demand a sale merely suspended until the *supersedeas* was discharged. If this be true, and we think it is, then these parties bought the property with the execution lien attached and would not be entitled to maintain their suit and injunction. We submit further that the demurrer should be sustained, the injunction dissolved and the property be sold as the writ in the hands of the sheriff commanded.

*Henry Hilbun,* for appellees.

We submit that when W. F. Shows, the defendant in the justice court judgment, whose land had been levied

on by virtue of an execution on said judgment, removed said case to the circuit court, by a writ of *certiorari,* giving a *supersedeas* bond, with security, as the law directs, that this forever removed the case from the justice of the peace court, that it operated as a *supersedeas,* and relieved and discharged the execution lien on said land, and that complainants, appellees here, received the property absolutely free from this execution lien. Section 90, Code of 1906, provides:

"All cases decided by a justice of the peace, whether exercising general or special jurisdiction, may within six months thereafter, on good cause shown by petition, supported by affidavit, be removed to the circuit court of the county, by writ of *certiorari,* which shall operate as a *supersedeas* the party, in all cases, giving bond, with security, to be approved by the judge or clerk of the circuit court as in cases of appeal from justices of the peace; and in any cause so removed by *certiorari,* the court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings."

It is not questioned by appellant that the said W. F. Shows, owner of the land in controversy, at that time, complied fully and strictly in conformity to the statute, in removing the case in which he was a defendant from the justice of the peace court to the circuit court of Forrest county. After the case had been thus removed, and, as we contend, the levy of the execution was discharged, he then sold the land to appellees. We say appellees obtained the property free from this execution lien; that the removal of this case to the circuit court by a writ of *certiorari,* discharged the execution lien, and forever removed the case, so far as the defendant was concerned, from the justice court.

Section 90 of the Code of 1906, expressly provides that the removal of a case to the circuit court by a writ of *certiorari,* and giving the proper bond, shall act as a *supersedeas.*

We desire first to call the attention of the court to the
case of *Parker* v. *Dean,* 45 Miss. 420. In this case a.
levy was made on personal property and the debtor
and owner of the personal property executed a superse-
deas bond and sued out a writ of error. The court in
deciding this point said :

"The effect of that was to stay. absolutely the sheriff
from further proceedings under the execution. As has
been practiced in this state, the execution of such a bond
is an amotion of a levy on personal property, the bond be-
ing considered security for the debt, and ample indem-
nity to the creditor for arresting any action of the sheriff
under the writ."

While the court in this case only decided in reference
to personal property, in *Buckley* v. *George,* 71 Miss.
page 589, the identical question before the court in the
case at bar was decided. Putman, Baldwin & Company
exhibited their bill against the appellants and others,
and had the appellees appointed receivers of the appel-
lants' property, consisting of a stock of goods, notes,.
bank accounts, etc., and of lands in Clark, Jasper and
other counties in this state, of the value of thirty thou-
sand dollars. The appellee gave bond as receivers and
took immediate possession of said estate. Appellant
then obtained a writ of *supersedeas* by entering into a.
bond in the penalty of twenty thousand dollars, which
bond was executed by her and was approved by the
proper officer. The appellant, thereupon, demanded pos-
session of all her estate from appellees, which was re-
fused by them and they continued in possession of her
property until the supreme court reversed the cause.
Appellant then sued appellees, the receivers, for with-
holding possession of her property from and after the
day the *supersedeas* was granted her.

On page 586, in its opinion, the court says : "The real
question involved is as to the effect of the *supersedeas*
when served upon the receiver. Did it serve only to

suspend further action under the decree, leaving the property committed by the order to their appointment to the receivers in their possession until the appeal should be finally determined, or was its effect to displace and discharge the superseded decree and entitle the owner whose possession had been disturbed to an immediate restitution of the property?"

The court then discusses the rule that existed at common law in cases of this character, and after weighing and considering this rule of the common law, adopted and followed by the courts of many states, that the *supersedeas* only suspended action of the officer making the levy. Our court expressly announced that the common law doctrine would not be followed in this state, and on page 589, says: "But the common law rule has never been adopted in this state, and with us the *supersedeas* discharged the levy of an execution." See also,. *State* v. *Johnson,* 13 .Fla. 33; *Blondhein* v. *Moore,* 11 Md. 365; *Everett* v. *State,* 28 Md. 190.

It follows, therefore, that the said W. F. Shows having obtained a writ of *certiorari,* and made the proper bond, which the statute says shall operate as a *supersedeas,* had his property restored to him without the execution lien, and had a right to sell and dispose of this. property so levied upon, and that appellees bought the property free from the lien.

The judgment in the *certiorari* proceedings, which appears in full in this record, shows that the case was tried in conformity with section 90 of the Code, and that the court was confined to the examination of questions of law arising or appearing on the face of the record and proceedings. Section 90 of the Code also provides the kind of judgment that should be entered on the trials of *certiorari* proceedings: "In the case of affirmance of the judgment of the justice of the peace, the same judgment shall be given as on appeals. In case of a reversal, the circuit court shall enter up such judgment as.

the justice ought to have entered, if the same be apparent, or may then try the cause anew on its merits, and may in proper cases enter judgment on the *certiorari* or appeal bond, and shall, when justice requires it, award restitution.''

It may be that the circuit court did not render the proper judgment, but the aggrieved party had the right of appeal. It may be that O'Ferrell Bros. were entitled to a judgment for the amount of their debt against W. F. Shows, principal, and N. J. Shows, U. S. Collins, L. R. Collins, and Vivan Collins, sureties on his bond, in this matter, but that is a matter that cannot now be complained of. The case was properly removed to the circuit court, which court had full jurisdiction to try and determine the matter as is provided in section 90 of the Code of 1906. A proper bond was given by the said W. F. Shows, which furnished full security to his adversaries, and out of which they could have realized their money if they had obtained the proper judgment. *Burrow* v. *Sanders,* 57 Miss. 211; *Evans* v. *Railroad,* 74 Miss. 230; *Hattiesburg Banking & Trust Co.* v. *Hood,* 52 So. 790.

In our opinion, appellees having purchased this property after the suing out of the writ of *certiorari* and execution of the *supersedeas* bond, that the lien on the levy of the execution was absolutely discharged and appellees received the property free from any execution whatsoever.

MAYES, C. J., delivered the opinion of the court.

On the 21st day of October, 1907, a justice of the peace judgment was recovered by E. G. and Charles O'Ferrell composing the partnership firm of O'Ferrell Bros., against W. F. Shows, A. E. Grayson, and Thomas Sims, for the sum of one hundred forty-one dollars, and seventy-six cents. No appeal was prosecuted from this judgment to the circuit court, and the validity of the

judgment is not questioned in this proceeding. On the 16th day of January, 1908, an execution was issued under the above judgment, directed to the sheriff of the county, and the sheriff levied the execution on certain real property belonging to W. F. Shows. Within six months after the rendition of the judgment, but after the levy of the execution by the sheriff and before the sale, W. F. Shows, on whose property the execution had been levied, and who was also one of the defendants in the judgment, applied for a writ of *certiorari* in accordance with section 90 of the Code of 1906, which writ was granted, and under it the case was removed to the circuit court. As an incident to obtaining the writ of *certiorari,* and in accordance with the requirements of the statute, Shows executed and filed a *supersedeas* bond, conditioned as required, which was duly approved, and all the papers in the case were sent by the justice of the peace to the clerk of the circuit court of the proper county. Afterwards the case was docketed in the circuit court, and on the 27th day of November, 1908, at a regular term of the circuit court, the case came on for trial on the *certiorari* and was disposed of by the circuit court. The judgment of the circuit court was substantially as follows: "This cause coming on to be heard on plaintiff's petition and writ of *certiorari,* the court is of the opinion that there is no error on the face of the record, and that the writ of *certiorari* was improperly sued out. It is therefore ordered by the court that the petition and writ be dismissed, and that petitioner, W. F. Shows, principal, and his sureties [naming them], pay all costs in this behalf expended, for which let execution issue."

It thus appears that the only judgment rendered on the bond by the circuit court was for costs. No appeal was taken from the judgment of the circuit court, and therefore the judgment dismissing the writ of *certiorari* and assessing costs was a final judgment. After the writ

of *certiorari* was awarded, and after bond had been executed and approved, W. F. Shows sold the land, which had been previously levied on under the writ of execution, to Bura Hillman and E. L. Shows. There were two deeds, and both deeds were duly filed in the office of the chancery clerk and recorded—one on the 27th day of September, 1908, and one on the 28th day of February, 1908. Subsequently the property was conveyed by Bura Hillman and E. L. Shows to T. J. Harris, Doctor Cranford, and O. D. Shows. Subsequently one A. E. Grayson, also a defendant in the judgment, purchased the same from O'Ferrell Bros., and on some day in the year 1910, claiming to own the judgment, Grayson had the justice of the peace, in whose office the judgment had been obtained, issue a *vendi exponas,* directed to the sheriff of the county, directing him to sell the lands which had been bought by the parties above named, the property to be sold as the property of W. S. Shows, to satisfy the judgment. When this last execution was issued the sheriff advertised the lands for sale on the 2d day of January, 1911. When this last advertisement was made, the appellees, claiming to own the property, applied for an injunction to restrain the sheriff from selling the lands, and restraining the justice of the peace from issuing any further executions against the lands, and enjoining Grayson from taking any further steps towards subjecting the lands to the satisfaction of the judgment. The bill alleges that when W. F. Shows applied for a writ of *certiorari,* and executed the *supersedeas* bond required by law, the effect of same was to discharge and release his property from the lien which had been established by the levying of the execution. In other words, the bill charges that, when the *certiorari* was granted and the bond given, it was a *supersedeas* bond, and had the effect to dissipate and dissolve all prior liens which had been established by virtue of the levy of the execution, and the property levied on became

the property of Shows, with absolute dominion over it, unaffected by the lien, and that Shows had a right to dispose of the property, and the purchaser got a good title, free from any liens which might previously have attached under the execution. The above is the substantial contention.

This bill was demurred to on many grounds; but the first and fifth are the only ones we shall notice, since they will dispose of the case. The first ground of the demurrer states that the judgment of the circuit court, dismissing the petition and writ of *certiorari*, and giving judgment against petitioner and his sureties on his bond for costs, only had the effect of leaving the judgment of the justice of the peace court in full force and effect, and also the levy made under the judgment. The fifth is that there is no equity on the face of the bill. This last cause of demurrer covers the whole case. The court overruled the demurrer, and allowed an appeal to this court to settle the principles of the case.

Section 90 of the Code of 1906, in relation to the procedure on *certiorari* to a justice of the peace court, is as follows: "All cases decided by a justice of the peace, whether exercising general or special jurisdiction, may, within six months thereafter, on good cause shown by petition, supported by affidavit, be removed to the circuit court of the county, by writ of *certiorari*, which shall operate as a *supersedeas*, the party, in all cases, giving bond, with security, to be approved by the judge or clerk of the circuit court, as in cases of appeal from justices of the peace; and in any cause so removed by *certiorari*, the court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings. In case of an affirmance of the judgment of the justice, the same judgment shall be given as on appeals. In case of a reversal, the circuit court shall enter up such judgment as the justice ought to have entered, if the same be apparent, or may then

try the cause anew on its merits, and may in proper cases enter judgment on the *certiorari* or appeal bond, and shall, when justice requires it, award restitution. The clerk of the circuit court on the issuance of a *certiorari,* shall issue a summons for the party to be affected thereby, and in case of nonresidents may make publication for them as in other cases.'' It is seen from the above section that, where the writ of *certiorari* is granted, it acts as a *supersedeas,* and the bond required is the same as required for an appeal from a justice of the peace in civil cases, under section 82 of the Code of 1906.

The sole question is: What is the effect of the *supersedeas granted* in this case? The facts show that before the *supersedeas* was granted an execution had been issued and levied on real property, and as a consequence a lien had been fastened on same. Is this lien destroyed by the granting of the *supersedeas,* or is the effect of the *supersedeas* simply to suspend further action under the judgment until the *supersedeas* is disposed of? In other words, are liens which were acquired before the *supersedeas* was granted destroyed by it, or are they merely stayed and preserved during the life of the *supersedeas?* We desire to emphasize the fact that in this case the levy was made on real, and not personal, property. We do this because many courts draw a distinction between the effect of a *supersedeas* where the levy is on personal property, instead of real estate. Many courts hold that a levy is discharged by a *supersedeas* when the levy is on personal property, but hold to the contrary when the levy is on real estate. There seems to be much reason in making the distinction, and we reserve the question for future determination. See *Thalheim* v. *Camp Phosphate Co.,* 48 Fla. 190, 37 South. 523, 5 Ann. Cas. 784, and note. The authorities on the proposition involved in this case are in irreconcilable conflict, and we must choose that line of authority which

we conceive to most accurately work out the best prin-
ciple of right.   It is our view that the granting of the
*supersedeas* affects only future acts, and that it has no
retroactive operation.   It suspends future action, and
prevents any further acquisition of liens or rights; but
it does not destroy or dissolve liens or·rights acquired
before the *supersedeas* was allowed.   It holds conditions
as they were at the time of granting the *supersedeas,*
and when it is dispensed with rights of the parties are
to be proceeded with and enforced as.they would have
been had no *supersedeas* been allowed.

One of the most interesting discussions on this subject
which we have found is to be found in the note to the case
of *Thalheim* v. *Camp Phosphate Co.,* 48 Fla. 190, 37
South. 523, in 5 Ann. Cas. 784.   This case also demon-
strates the hopeless conflict of the courts on this sub-
ject.· It is our judgment that the best-reasoned authori-
ties hold that the perfecting of a *supersedeas* only stays
further proceedings, and does not interfere with what
has already been done.   In the case of *Thalheim* v. *Camp
Phosphate Co., supra,* the court said:   "The levy of an
execution is not defeated by a subsequent writ of *super-
sedeas;* but the only effect a *supersedeas* can have in
such a case is to stay all further proceedings, letting
things which have already been done remain in *statu
quo.*"

It was error in the court to overrule the demurrer, and
its judgment in so doing is reversed, demurrer sustained,
and cause remanded, for the settlement of other ques-
tions which may arise on the record as to damages, etc.

*Reversed and remanded.*

ON SUGGESTION OF ERROR.

MAYES, C. J., delivered the opinon of the court.

This cause was decided at a former day of the term,
but is called to our attention again ·by a suggestion of

error. We thoroughly discussed the law in the former opinion, and held that the giving of a *supersedeas* did not have the effect of destroying previously acquired liens on land. We held that as to lands, when a *supersedeas* was given, its effect was only to arrest further action, and hold conditions as the *supersedeas* found them at the time of the execution of the bond, leaving parties to enforce their rights, after the dissolution of the *supersedeas,* as they would have been enforced had no *supersedeas* been given. This is the substance, of the former opinion, and we shall not undertake to repeat in detail here the holding of the court in the opinion first delivered, because it is in the record to speak for itself.

Counsel filing the suggestion of error assert that the former opinion is in conflict with the case of *Buckley* v. *George,* 71 Miss. 580, 15 South. 46, and declare that they "do not think such an important principle" as that declared by the *Buckley case* "should be lightly set aside, without at least having the case referred to in the opinion of the court." We respond to the suggestion of error, because in our judgment counsel are misled by the *Buckley case*. If the *Buckley case* has any bearing on the question in this case, it supports the view of the court and does not conflict with it. The question in this case is as to whether or not a *supersedeas* destroys previously acquired liens on land. The question in the *Buckley case* was whether or not the receivers should continue in possession of a stock of goods, choses in action, and land, after the execution of a *supersedeas* bond by the party whose property had been placed in the hands of a receiver. In the *Buckley case* there was no question as to whether or not a lien was destroyed by the execution of a *supersedeas*. It was a question of where the title was vested pending an appeal with *supersedeas* from an order of the chancery court appointing a receiver. In the *Buckley case* the facts show that a receiver was appointed to take charge of a stock of goods,

choses in action, and land. At the time the receiver was appointed, Mrs. Buckley applied for an appeal to the supreme court with a *supersedeas.* The chancellor allowed the appeal, but denied the *supersedeas,* whereupon Mrs. Buckley applied to the chief justice of this court for a writ of *supersedeas,* which was granted, and in accordance therewith Mrs. Buckley executed a *supersedeas* bond and demanded of the receivers that they give to her the possession of her property. The receivers declined to do this, and afterwards Mrs. Buckley instituted suit on their bond for damages, which she claimed for the deterioration in the value of the stock of goods, and for the detriment to her business on account of the refusal, on the part of the receivers, to turn her property to her after the execution of the *supersedeas* bond. It appears from the case that the order of the chancellor appointing the receivers was reversed by the supreme court before the suit of Mrs. Buckley was instituted on the bond. On these facts, the court held in the *Buckley case* that "ordinarily, the rule undoubtedly is that a *supersedeas* fixes and preserves the existing conditions until the cause can be finally heard and determined. Nothing that has been done under the judgment or decree is undone, or its validity impaired; but nothing further can be done, for the judgment or decree being the sole authority for action, and it being superseded, there is necessarily a suspension of action. But it would be a fatal adherence to rules of procedure that would destroy an estate to preserve an analogy; and when it is, in the nature of things, impossible that the status can be preserved by inaction, it necessarily follows that action of some sort by some one must be permitted. To give any effect to a *supersedeas,* it must be held to at least suspend further action under the judgment or decree. . . . If the *supersedeas* merely paralyzes the receiver as an actor, and leaves the property, as it were, in mortmain pending the appeal, the

strange result will have been produced of changing the nature of the decree originally made, of authorizing that to be done which never would have been directed by any court, and of destroying the estate by enforced inaction and mere lapse of time. . . . The legal effect of the *supersedeas* was to withdraw from the receivers the right to the possession of the property, and vest that right in the party from whom it had been taken.''

It will be seen from the above opinion that the court distinctly recognizes the application and soundness of the rule which we announced in the former opinion of this court. In the *Buckley case* the court says: ''The rule undoubtedly is that a *supersedeas* fixes and preserves the existing condition until the cause can be finally heard and determined.'' But when the application of this rule would result in the destruction of the estate, the court will not adhere to this rule of procedure merely to preserve an analogy. In all such cases courts have power to make such orders as are necessary for the preservation of the estate, and since, when the *supersedeas* bond was given by Mrs. Buckley, it prevented any further action on the part of the receivers, and since, if they could not act, it would destroy the estate itself, the court in that case gave that effect to the *supersedeas* which was necessary to preserve and not destroy.

But the question in that case is totally different. The *Buckley case* illustrates the reason why the authorities make a distinction between real estate and personal property. If there was no distinction and the giving of a *supersedeas* allowed no further dealing with personal property until after the *supersedeas* should be disposed of, it might result in the entire loss of the property itself, and hence the courts, applying the principle which is announced in the *Buckley case,* refuse to ''follow an analogy where it leads to the destruction of an estate,'' and make a distinction between real and personal property in the effect given to a *supersedeas.*

*The suggestion of error is overruled.*